IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

M&K RESTAURANT LLC, et al.                                    PLAINTIFFS

v.                              Case No. 4:12-cv-00783 KGB

FARMERS INSURANCE COMPANY, INC.,
DENNIS RAY HENLEY d/b/a DENNIS RAY HENLEY
INSURANCE AGENCY, JOHN DOES 1-10                             DEFENDANTS

## OPINION AND ORDER

Before the Court are cross motions for summary judgment, a motion to dismiss, a motion to quash the jury demand, and a motion to strike.  Plaintiffs ("the Perrys") have moved for partial summary judgment (Dkt. No. 12).  Defendant Farmers Insurance Company ("Farmers") has responded in opposition (Dkt. No. 18), and the Perrys have replied (Dkt. No. 23).  The Perrys seek partial summary judgment in their favor that Farmers breached a flood insurance contract with the Perrys.  Farmers in its cross motion for summary judgment raises several arguments in support of its position that the Perrys' claims are barred and that the Perrys should not recover under the policies (Dkt. No. 46).  The Perrys have responded to that motion (Dkt. No. 69).  Additionally, Farmers has filed a motion to dismiss (Dkt. No 44) to which the Perrys have responded (Dkt. No. 66).  Farmers also filed a motion to quash the jury demand (Dkt. No. 39) to which the Perrys have responded (Dkt. No. 43) and Farmers has replied (Dkt. No. 62).  Finally, the Perrys have filed a motion to strike (Dkt. No. 67).

Farmers participates in the United States' National Flood Insurance Program ("NFIP"), regulated primarily by the Federal Emergency Management Agency ("FEMA"), as a Write-Your-Own carrier ("WYO").  *See* 42 U.S.C. § 4071.  WYOs issue flood insurance policies underwritten by the U.S. Treasury and must use the Standard Flood Insurance Policy ("SFIP")

promulgated by federal regulations at 44 C.F.R. § 61, app. A.  In return for administering these SFIPs, WYOs receive profits for their participation based upon a percentage of premiums paid. *See Eddins v. Omega Ins. Co.*, 825 F.Supp. 752, 753 (N.D. Miss. 1993).  Farmers and the Perrys represent that, on May 2, 2011, separate defendant Dennis Henley sold the Perrys an SFIP for their motel property in Lonoke County, Arkansas, and that one day later, on May 3, 2011, the Perrys' property flooded.  The instant action and contested issues flow from that insurance policy and the ensuing flood.  For the reasons set forth below, the Court denies both motions for summary judgment and Farmers' motion to dismiss.  The Court also grants in part and denies in part the Perrys' motion to strike and Farmers' motion to quash the jury demand.

## I.     Jurisdiction

The Perrys claim, and Farmers admits, jurisdiction pursuant to 42 U.S.C. § 4072 and 28 U.S.C. § 1367.  While § 4072 clearly allows suits against the Administrator of FEMA when the Administrator denies a claim, it does not mention actions against WYO carriers.  Neither the Perrys nor Farmers have sued the Administrator of FEMA.  The Eighth Circuit has never addressed directly the issue of federal jurisdiction over suits against WYO carriers under § 4072, and there is no consensus among the circuits that have.  *Stoner v. S. Farm Bureau Cas. Ins. Co.*, 2013 WL 593459 at *2 (E.D. Ark. Feb. 15, 2013) (citations omitted).  All courts that have addressed the issue, however, agree that the federal question jurisdiction statute, 28 U.S.C. § 1331, grants federal courts jurisdiction over policies issued under the NFIP.  *Id.*  The Court is thus satisfied that it has jurisdiction over the instant case concerning a policy issued under the NFIP pursuant to § 1331 and can proceed to the merits of the case.

## II.    Factual Background

Michael and Kay Perry own M&K Restaurant LLC ("M&K").  In 2008, M&K took over operations of Perry's Motel, a small motel along Interstate 40 in Lonoke County, Arkansas. Perry's Motel has been owned by the Perry family for decades.  The Perrys allege that, from 2008 to 2011, they restored the motel, financed through a home equity line of credit from Bank of the Ozarks obtained on July 10, 2008.  That loan was collateralized through a mortgage on the home of the 81-year old family matriarch, Ms. Juanita Canton, who allegedly depends upon the income from the motel.

The motel property is not mentioned in the July 10, 2008, line of credit document (Dkt. No. 47-8), but a June 22, 2008, letter from Bank of the Ozarks to Mr. Perry advises that the Bank of the Ozarks could not use the motel property as collateral for a loan, since the motel was located on leased property, but notes that "the loan is to be used for renovation of the motel property and the resulting revenues used to repay the loan" (Dkt. No. 71-4, at PC 000127).  The Bank instead held Ms. Canton's property located at 321 Woodlawn Drive in Lonoke as "primary collateral," with the stipulation that a fire policy be kept on Ms. Canton's property and that a fire and flood policy be placed on the motel property (*Id.*).  The Perrys assert that this and other correspondence from the Bank of the Ozarks shows that income from and repairs to the motel were the driving forces behind the loan (*See also id.*, at PC 00104–05).

The Perrys allege that in March of 2011 they sought a quote for flood insurance on Perry's Motel from separate defendant Dennis Henley.  They allege that on May 1, 2011, Mr. Henley provided them a quote for the insurance coverage.  On May 2, 2011, the Perrys submitted to Mr. Henley an application for flood insurance with a letter attached from Bank of the Ozarks

regarding their loan, and Mr. Henley sold the Perrys an SFIP for their motel property.  One day later, on May 3, 2011, Perry's Motel flooded.

Mr. Henley represented to the Perrys, and requested in the Perrys' application to Farmers, that coverage would bind immediately (Dkt. No. 12-1, PERRY 001–003).  However, under the NFIP, coverage under a new contract for flood insurance generally does not become effective until 30 days after the insurance applicants complete all of their obligations for coverage.  42 U.S.C. § 4013(c)(1).  This provision does not apply where "the initial purchase of flood insurance coverage" is purchased "in connection with the making, increasing, extension, or renewal of a loan."  42 U.S.C. § 4013(c)(2)(B).  Whether the Perrys' initial purchase of flood insurance coverage from defendants was purchased "in connection with the making, increasing, extension, or renewal of a loan," specifically the nature of the Perrys' loan with the Bank of the Ozarks to finance Perry's Motel and whether the Perrys misled defendants about the nature of the loan, is contested by the parties.

On May 10, 2011, Farmers sent the Perrys a Declaration Page with a June 1, 2011, coverage beginning date (Dkt. No. 71-6, at PC 005–007).  On May 11, 2011, after the Perrys complained, Farmers sent the Perrys a revised Declaration Page with a May 2, 2011, coverage beginning date (*Id.*, at 009–010).  Farmers alleges that it did so predicated on the assumption that the lender required the flood policies in connection with a loan.

The Perrys allege, and Mr. Henley corroborates that, before the Perrys began repairs on the motel, Farmers advised Mr. Henley that the Perrys would be covered for the flood damage (Dkt. No. 12-2, ¶21).  In his deposition, Mr. Henley states that he contacted Farmers to ask if demolition had been fully approved and that Farmers responded, "Yes, they can do it." (Dkt. No. 72-1, at 48).  The Perrys further allege that, during the adjustment of their claims, the adjuster

4

retained by Farmers, Anthony Childers, who was dispatched to Perry's Motel after the flood waters receded, was called away to deal with claims arising from Hurricane Irene. For this reason, his adjustment of the Perrys' claims was delayed months while the Perrys spent over $200,000.00 on repairs (Dkt. No. 12-2, ¶¶22–24).

On June 7, 2011, Mr. Childers issued a report to Farmers recommending that Farmers deny the Perrys' claim "due to the fact that the policy was not 30-days into its effective period." (Dkt. No. 47-15). It goes on to advise, that the

> loan documentation papers state that there is no mortgage on the insured property due to the fact the property is constructed on leased property. The lending organization would not issue mortgage on the insured property but took mortgage on residence owned by the policy holder to make renovations to the hotel. It was stated in the loan papers in 2008 that flood policy should be taken for the hotel property. The insured did not pursue flood policy until an impending Flood-In-Progress threatened to damage the risk.

*Id.* Mr. Childers issued another report on July 8, 2011, that stated the loan documentation was sufficient to waive the 30-day waiting period but to deny the claim based on a flood-in-progress which he claimed began on April 26, 2011, before the Perrys applied for the policy (Dkt. No. 18-8). Mr. Childers issued a third report on September 21, 2011, wherein he amends his prior final report to state that there was no flood in progress at the time the Perrys secured flood insurance (Dkt. No. 23-2, PC 000191–93; *see also* Dkt. No. 72-5, at 46, 53–61 (Mr. Childers's deposition explaining the research that led to his change of opinion regarding the flood-in-progress issue); Dkt. No. 23-5, PC 000417–18 (Mr. Childers's technical explanation as to why there was no flood in progress at issue with regard to the Perrys' claim)).

On June, 27, 2011, the Perrys submitted to Farmers proof of loss forms claiming zero dollars ($0) (Dkt. No. 18-10). The Perrys allege that this was done "as instructed by" Mr. Childers (Dkt. No. 12-2, ¶19). Mr. Childers in his deposition stated that he believes he filled out

the proofs of loss with the zero dollar amount and believed that this would preserve the Perrys' rights under their policy (Dkt. No. 72-5, at 36–38).  Mr. Henley in his deposition also stated that either Mr. Childers or Farmers sent him and the Perrys the proofs of loss with the zero dollar loss amount (Dkt. No. 72-1, at 53:23–54:2)  On September 1, 2011, the Perrys sent an email to Mr. Childers requesting finalization of their claim (Dkt. No. 12-4).

On September 9, 2011, Farmers sent a letter to the Perrys stating in part that "[t]he adjusters supplemental report indicates you have not submitted your signed, dated and sworn supplemental proof of loss for additional damages.  You will need to submit the supplemental signed, dated and notarized proof of loss and request for waiver without further delay." (Dkt. No. 47-4).  The letter further stated that the Perrys' claim would "remain closed at this time pursuant to the Standard Flood Insurance Policy," and "[i]f you do not agree with your insurer's decision to deny your claim or any part of the claim Federal law allows you to appeal that decision within 60 days of the date of this denial letter."  *Id.*

On September 12, 2011, Mr. Childers responded to the Perrys' email with the building damage estimates (Dkt. No. 12-4).  In his email, Mr. Childers told the Perrys that if they signed and submitted the proofs of loss forms attached to his email it would "get over 400K in [their] hands" (*Id.*).  That day, the Perrys signed the proofs of loss forms for $130,056.25 and $286,468.68 attached to Mr. Childers's email.

On September 26, 2011, National Flood Services – Stone River ("NFS"), the vendor who services Farmers' flood policies, through its employee Alana Jackson sent an email to FEMA stating that the flood damages to the Perrys' property were covered under the policy and that the Perrys were entitled to recover for the damages, concluding that the lender-required policy became effective on May 2, 2011 (Dkt. No. 69-1, at 34:16–36:1).

On November 17, 2011, FEMA required Farmers to submit a copy of its entire file to FEMA for review of the Perrys' claim, and Farmers claims it submitted the file the next day (Dkt. No. 47-18).   However, further correspondence between NFS and FEMA shows that on December 2, 2011, FEMA requested additional documentation substantiating the loan closing date—specifically the June 22, 2008, letter from Bank of the Ozarks to Mr. Perry which states that flood insurance was to be in place since 2008 for the duration of the loan and documents pertaining to Bank of the Ozarks attempting to force place flood insurance—documents FEMA states it did not receive (Dkt. No. 71-8, at PC 00135–37).  A few hours after FEMA requested the additional documentation, Ms. Jackson replied that she would "need to call the agent to see if he can obtain this for me.  I will send this to you as soon as I have received it." (*Id.*, at PC 00135).  On December 6, 2011, FEMA wrote back to Ms. Jackson at NFS stating

> As I stated last week, [the Claims Department of the Federal Insurance & Mitigation Administration, an entity within FEMA,] received Congressional correspondence regarding this case.  At this point, Claims has decided to move forward with their response to the correspondence and denial of the insured's appeal due to insufficient loan closing/mandatory purchase documentation on which to support the policy's effective date and waiving of the 30 day waiting period.  If at some point the insured does provide the proper documentation, please feel free to forward it to me.

(*Id.*).

Amy Itschner, Corporate Representative of Farmers, stated in her deposition that she believed from this correspondence that, by December 6, 2011, Ms. Jackson had not provided the loan closing documentation from Bank of the Ozarks which FEMA requested (Dkt. No. 69-1, at 102:3–108:4).  There is some indication in Ms. Itschner's deposition based on her review of an "Exhibit 24" that Ms. Jackson may have submitted some or all of these documents on or around December 12, 2011, but Ms. Itschner states that it appeared that the FEMA representative with

whom Ms. Jackson had been corresponding did not have the relevant documents (*Id.*, at 108:23–109:17).

On December 30, 2011, Farmers sent a Declination Letter to the Perrys stating that the flood began in the Perrys' "area" on May 3, 2011 (Dkt. No. 12-6).  Farmers notes in its letter that this date is prior to the inception date of the Perrys' SFIP as a 30-day wait period was applied to their policy because the loan documentation they provided was insufficient to issue the policy immediately as "lender required" (*Id.*).

On January 9, 2012, Edward Connor, the Deputy Associate Administrator for Federal Insurance within FEMA, sent a letter to Senator Mark Pryor pursuant to Senator Pryor's constituent inquiry regarding the Perrys' claim.  Within the letter Mr. Connor explained, as Farmers did in its letter to the Perrys, that the 30-day waiting period applied to the Perrys because the flood policy was not "required by a lender for a loan closing" (Dkt. No. 18-2, PC 000045).  Mr. Connor additionally determined that there was a "flood in progress" on May 2, 2011, at the time the Perrys requested coverage which would void any coverage over losses in connection with that flood, even if coverage for the Perrys began immediately (*Id.*).  Mr. Connor further noted that "Farmers received a letter from Bank of the Ozarks dated June 22, 2008, describing the borrowers requirement to obtain and maintain flood insurance," but nevertheless found that a 30-day waiting period applied because the policy was not purchased until almost three years later and one day prior to the loss (*Id.*).  The Perrys contest that the 30-day waiting period applied, contest that there was a flood in progress on May 2, 2011, and maintain that there is no information in the record to determine how Mr. Connor arrived at the conclusions in his letter or if he wrote the letter (*See* Dkt. No. 69-1, at 22:11–24:17).

On February 23, 2012, after Farmers and FEMA had reviewed and denied the Perrys' claim, Farmers sent the Perrys another revised Declaration Page with a June 1, 2011, coverage beginning date (Dkt. No. 18-1, UW 7–8 & 44–45).

In a September 13, 2012, letter to Michael Perry, James Sadler, the Director of Claims for the NFIP wrote that FEMA had reviewed the June 22, 2008, letter from Bank of the Ozarks confirming the "requirement to obtain and maintain flood insurance," but found that a 30-day waiting period applied because the policy was not purchased until almost three years later and one day prior to the loss (Dkt. No. 47-10). His letter does not mention a flood-in-progress issue (*Id.*).

The Perrys filed this suit on December 18, 2012.

### III.    Requests To Exclude Documents From Consideration

The Perrys object to the January 9, 2012, letter from Mr. Connor and the September 13, 2012, letter from Mr. Sadler as inadmissible evidence on the grounds of lack of authentication and hearsay. It is well settled that a party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay. *See, e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013); *Guest v. Shell*, 2013 WL 1089039 (E.D. Ark. Mar. 14, 2013). However, the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form. *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Rule 56 of the Federal Rules of Civil Procedure permits a party to object to evidence cited by the other party at the summary judgment stage and requires the Court to make a determination regarding whether the evidence could be presented at trial in an admissible form. *See* Fed. R. Civ. P. 56(c)(2). The Court finds that these letters could be properly authenticated, among other ways, with a supporting affidavit

or testimony.  Further, through supporting affidavits or testimony, Farmers could establish that these letters meet the requirements of records of a regularly conducted activity and, therefore, are an exception to hearsay.  *See* Fed. R. Civ. P. 803(6).  The Court will consider these documents at the summary judgment stage.

The Perrys also move to strike the affidavit of Scott Holmes attached to Farmers' motion for summary judgment at Dkt. No. 47-1 and *amicus* briefs filed by FEMA through the Department of Justice in 1998 and 2000 in unrelated NFIP cases at Dkt. Nos. 45-5 and 45-6 (Dkt. No. 67).  Regarding the motion to strike the affidavit of Scott Holmes, Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to disclose the names of all individuals likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses.  Federal Rule of Civil Procedure 37(c)(1) provides that failure to identify a witness as required by Rule 26(a) bars the use of that witness on a motion, unless the failure was substantially justified or is harmless.  The Perrys assert that Farmers did not name Mr. Holmes in its initial disclosures, as a corporate representative, or in response to any discovery request.  Since the discovery deadline in this case has passed, the Perrys assert that the inclusion of Mr. Holmes's affidavit is prejudicial because they will not be able to take his deposition or otherwise inquire about the bases for his affidavit through discovery.  Farmers did not respond to this motion, and the time to do so has passed.  Therefore, the Court grants in part the Perrys' motion to strike as it relates to Mr. Holmes's affidavit, thus striking the affidavit from the record.

Regarding the *amicus* briefs, the Perrys offer various arguments to support their claim that the *amicus* briefs are not admissible evidence, that the Court should not take judicial notice of the briefs because the briefs do not constitute the current official position of FEMA on this

lawsuit or on the NFIP in general, and that admission of these briefs would be prejudicial to the Perrys and that the briefs should therefore be excluded.  As noted above, Farmers did not respond to this motion, and the time to do so has passed.

These *amicus* briefs relate to issues raised in the pending motion to dismiss, and the Court will examine their admissibility in that context.  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court is not precluded in its review of the complaint from taking notice of items in the public record.  *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); *Stutzka v. McCarville*, 420 F.3d 757, 761 n. 2 (8th Cir. 2005); *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003).  Court records are public records.  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98 (1978).  "Documents that are part of the public record, such as court records, can be considered when deciding a Rule 12(b)(6) motion . . . ."  *Brown v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 330236, *1 (E.D. Ark. Jan. 28, 2010). Although the Court notes the Perrys' objections as to the relevance and dated nature of the opinions expressed therein, the Court nevertheless takes judicial notice of the *amicus* briefs provided by Farmers at Dkt. Nos. 45-5 and 45-6 and affords the briefs whatever weight is appropriate given the Perrys' objections, denying in part the Perrys' motion to strike as it relates to the *amicus* briefs.  *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 500 n.2 (6th Cir. 2003), *holding modified on other grounds by Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010) (denying a motion to strike and taking judicial notice of an *amicus* brief filed by the government in another case); *Bowoto v. Chevron Corp.*, 2006 WL 2455752, *2 n.4 (N.D. Cal. Aug. 22, 2006) (granting defendants' request to take judicial notice of *amicus* briefs filed by the United States government in cases involving the relevant statute); *Serv. Employees Int'l Union, Local 102 v. Cnty. of San*

*Diego*, 60 F.3d 1346, 1357 n.3 (9th Cir. 1994) (taking judicial notice of a government agency's *amicus* brief in another case as part of an official court record); *cf. Aetna Life Ins. Co. v. Bay Area Surgical Mgmt., LLC*, 2013 WL 685375, *2 (N.D. Cal. Feb. 25, 2013) (declining to take judicial notice of an *amicus* brief filed in another case where the legal claims were inapposite); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1142 (C.D. Cal. 2012) (declining to take judicial notice of *amicus* briefs, ruling that their inclusion was an implicit attempt to exceed the page limits for briefing or to file *amicus* briefs without leave).  Therefore, the Court grants in part and denies in part the Perrys' motion to strike (Dkt. No. 67).

### IV.    Summary Judgment Standard

The Court now will examine the parties' pending motions for summary judgment.  The Perrys move for partial summary judgment in their favor that Farmers breached a flood insurance contract with the Perrys (Dkt. No. 12).  Farmers has responded in opposition (Dkt. No. 18), and the Perrys have replied (Dkt. No. 23).  Farmers filed a cross motion for summary judgment on the same issue (Dkt. No. 46), and the Perrys have responded to that motion (Dkt. No. 69).

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not

rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## V.    Summary Judgment Discussion

The Perrys move for partial summary judgment in their favor on the breach of contract count, claiming that Farmers has breached its contract with the Perrys based on the language of the insurance policy Farmers wrote by denying and refusing to pay the Perrys' claims (Dkt. No. 12). Farmers filed a cross-motion for summary judgment in its favor on the breach of contract count, making several arguments in support (Dkt. No. 46). Farmers contends that the Perrys filed their lawsuit more than one year after the denial of their claims and that, therefore, the Perrys' suit is barred. Farmers also claims that the Perrys' two SFIPs were subject to the 30-day waiting period. As a result, because Farmers contends the 30-day waiting period applied, Farmers maintains the Perrys' SFIPs were not effective on the date of the loss and that Farmers is entitled to summary judgment in its favor on the Perrys' claims. Further, Farmers argues that the SFIP should be void for alleged intentional misrepresentation or concealment on the part of the Perrys. Farmers also contends that there was a flood in progress when the Perrys purchased flood insurance. Farmers argues that, because the SFIP does not insure a loss caused by a flood that is already in progress at the time and date the policy term began or coverage is added at the insured's request, the Perrys' losses are not covered by the SFIP. Finally, Farmers claims the

Perrys failed to submit a timely Proof of Loss swearing to a sum certain of damages to Farmers and that this failure is fatal to the Perrys' claims. The Court will examine each of these arguments in turn.

### A.      Whether SFIP Regulations Apply

First, however, the Court examines the legal context in which these flood insurance claims arise. The SFIP is "more than a contract:  it is also a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policy holders." *Mancini v. Redland Ins.Co.*, 248 F.3d 729, 733 (8th Cir. 2001). The Supreme Court has held that courts must strictly construe the statutory or regulatory limits upon disbursements of funds through federal insurance programs. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385–86 (1947); *Mancini* 248 F.3d at 733. All flood insurance policies provide flood insurance subject to the terms of the National Flood Insurance Act of 1968 and the regulations found in Title 44 of the Code of Federal Regulations. WYO insurers have no authority to alter, waive, or amend the terms of the SFIP without express written consent from the federal insurance administrator. *Dickson v. American Bankers Ins. Co. of Florida*, 739 F.3d 397, 398 (8th Cir. 2014); 44 C.F.R. §§ 61.4(b), 61.13(d)–(e).

> The SFIP contains a provision that reads:  "This policy *and all disputes arising from the handling of any claim under the policy* are governed *exclusively* by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.), and Federal common law."

*Gunter v. Farmers Ins. Co., Inc.*, 736 F.3d 768, 772 (8th Cir. 2013) (quoting 44 C.F.R. Pt. 61, App. A(1), Article IX) (emphasis added in *Gunter*).

The Perrys argue that the SFIP regulations should not apply because the SFIP regulates the "conditions under which **federal flood-insurance funds** may be disbursed to eligible policy holders," and the Perrys contend that Farmers, not the federal government, is the contracting

party.  *See Mancini*, 248 F.3d at 733 (citing 44 C.F.R. § 61.13) (emphasis added).  Farmers, as a

WYO, is authorized under the "Arrangement" between itself and the federal government to

administer claims pursuant to NFIP regulations and applicable federal agency guidance on behalf

of the federal government.  44 C.F.R. Part 62, app. A, art. II(D)(3), (G)(1).  The Perrys argue that

Farmers exceeded the scope of its arrangement with the federal government by varying, altering,

or waiving SFIP provisions in their contract with the Perrys.  The regulations concerning the

NFIP acknowledge that there may be lawsuits against WYOs acting "significantly outside the

scope of the Arrangement" for which the federal government would not be responsible.  *Id.* at

art. III(D)(3).  However, this argument is unavailing because "FEMA is presumed to pay the

WYO insurer's litigation expenses and any resulting damages awards."  *Dickson*, 739 F.3d at

400 (citations omitted).  As the Perrys have provided no evidence to rebut the presumption that

federal funds are at stake, and Farmers has asserted that FEMA has provided no indication to

Farmers that FEMA will not indemnify Farmers for the costs and any damages associated with

this litigation, this Court presumes federal funds are at stake.  *See id.*  For these reasons, the

Court determines the SFIP regulations apply to the Perrys' SFIP contract with Farmers.

## B.      Timeliness Of The Perrys' Lawsuit

Farmers next argues that the Perrys' claim should be denied and their lawsuit dismissed

because the instant suit was filed more than one year after the denial or partial denial of their

claim.  The SFIP states, "you must start the suit within one year of the date of the written denial

of all or part of the claim."  44 C.F.R. Part 61, app. A(2), art. VII(R); *see also* 42 U.S.C. § 4072

("the claimant, within one year after the date of mailing of notice of disallowance or partial

disallowance by the Administrator, may institute an action").  The Perrys filed the instant suit on

December 18, 2012.  On September 9, 2011, Ms. Jackson, on behalf of Farmers, sent the Perrys a

letter which denied in part their claim based on "[t]he adjuster's supplemental report" (Dkt. No. 47-4).  On December 30, 2011, Farmers sent another letter denying the Perrys' claim based on a flood in progress and inapplicability of the 30-day waiver based on the loan documentation received (Dkt. No. 47-16).

The Perrys respond by claiming that the December 30, 2011, not the September 9, 2011, letter first denied their claim and, therefore, that their suit was filed timely.  The Court need not address this argument because the Perrys also argue, and the Court agrees, that, since the September 9, 2011, denial letter was not based upon a proof of loss, it does not trigger 42 U.S.C. § 4072.  "The one-year filing period begins to run when FEMA denies a claim that is based upon the insured's sworn proof of loss, not from the date FEMA denies a claim based upon an adjuster's report."  *Altman v. Napolitano*, 2013 WL 788452, *1 (S.D. Tex. Mar. 1, 2013) (citing *Qader v. FEMA,* 543 F.Supp.2d 558, 561–62 (E.D. La. 2008)).  "[T]he mailing of a pre-proof of loss notice letter of disallowance by a claims examiner . . . does not trigger the one-year filing period in § 4072 or Article VII(R) of the SFIP."  *Altman*, 2013 WL 788452 at *1.

## C.    Applicability Of The 30-day Waiting Period Before Coverage

The parties contest whether the Perrys' purchase of flood insurance in fact was done "in connection with the making, increasing, extension, or renewal of a loan" as required by 42 U.S.C. § 4013(c)(2) for coverage to bind immediately upon payment, and the parties contest whether the applicable standard for determining applicability of the 30-day waiting period is  42 U.S.C. § 4013(c)(2) or 44 C.F.R. § 61.11(b) which provides:

> Where the initial purchase of flood insurance is in connection with the making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is the subject of the loan shall be effective as of the time of the loan closing, provided the written request for the coverage is received by the NFIP and the flood insurance policy is applied for and the presentment of payment of premium is made at or prior to the loan closing.

16

The Perrys contend that Farmers should not be able to rely on this regulation because it imposes a different set of standards than does the statute and FEMA's NFIP Manual which provides in part:

3. New Policy – No Waiting Period (in connection with lender requirement)

The 30-day waiting period does not apply when flood insurance is required as a result of a lender determining that a loan on a building in an SFHA that does not have flood insurance coverage should be protected by flood insurance.   The coverage is effective upon the completion of an application and the presentment of premium. . . .

(*Example*: presentment of premium and application date – April 3; policy effective date – April 3.)  If a loss occurs during the first 30 days of the policy period, the insurer must obtain a copy of the letter requiring mandatory purchase, to verify the effective date of the policy before adjusting the loss.  The letter must be dated on or before the policy effective date.

(Dkt. No. 71-1, at GR 9).  The Perrys assert that they qualify for the exception to the 30-day waiting period created by the language of the National Flood Insurance Act ("NFIA") and the NFIP Manual drafted and distributed by FEMA and that Farmers and FEMA are prohibited from retreating from the official interpretations of the regulations provided in the NFIP Manual.  *See Alaska Prof'l Hunters Ass'n, Inc. v. F.A.A.*, 177 F.3d 1030, 1035 (D.C. Cir. 1999) (determining that, when a local office gives an interpretation of a regulation, it does not necessarily constitute an authoritative administrative position but that, where an agency uniformly gives certain guidance, that advice can become an authoritative departmental interpretation).

The Court, noting that it must strictly construe all statutory and regulatory limits of the SFIP, finds that the regulation, which is part of the contract between the Perrys and Farmers, is not contradicted by the NFIP Manual.  The Court finds that the NFIP Manual, the statute, and the regulation can be read in harmony, with the regulation having the strictest interpretation of the 30-day wait provision.  Furthermore, unlike the plaintiffs in *Alaska Professional Hunters*, there

is no evidence in the record before the Court that the Perrys relied upon the NFIP Manual's provisions in any decision-making prior to filing this case.   Thus, the Court finds that the provisions of 44 C.F.R. § 61.11(b) apply in this case.

Farmers argues that the home equity line of credit taken out by Ms. Canton collateralized by her home does not qualify as an appropriate loan under the NFIP because it was not applied for until 35 months after the loan was made, because the payment of the premium was not presented "at or prior to the loan closing," and because Ms. Canton's residence, not the motel, is the "property which is the subject of the loan," thus making the property ineligible for the 30-day waiting period under 44 C.F.R. § 61.11(b).   The Perrys, on the other hand, argue that because the loan at issue is a line of credit and that the loans authorized under that line of credit are made and renewed on an ongoing basis, authorized through June 15, 2015, and required by the lender, the loan at issue qualifies for the waiver of the 30-day waiting period.   The Perrys further state, and correspondence between the Perrys and Bank of the Ozarks corroborates, that while Ms. Canton's home was technically the primary collateral of the line of credit, the loan was to be used for making repairs to the motel, and the resulting revenues from the motel were to be used to pay off the credit.

The Court notes that Farmers and its agents several times represented to the Perrys and amongst themselves that the 30-day waiver applied to the Perrys.   First, Farmers' agent Mr. Henley requested of Farmers in the Perrys' application that Farmers bind coverage immediately (Dkt. No. 12-1, PERRY 001–003).   Second, upon the Perrys' receipt of and complaint about the first (May 10, 2011) Declaration Page with a June 1, 2011, policy starting date, Farmers sent the Perrys a revised Declaration page the next day (May 11, 2011) with a May 2, 2011, policy starting date.   Third, NFS sent three emails to the adjustment company retained by Farmers,

Colonial Claims, stating that the loan at issue was sufficient to waive the 30-day wait policy. The first email of May 31, 2011, states "the documents are sufficient" to "support the effective dates of the policy without a 30 day wait" (Dkt. No. 23-12; *see also* Dkt. No. 18-8, report by Mr. Childers stating the same).   The second email of July 2, 2011, states, "[t]he insured has provided sufficient documentation to issue the policy without the 30 day waiting period.   Although the loan was taken out in 2008, we have a letter dated 4/15/2011 & 05/02/2011 from the lender indicating flood insurance is a requirement of the loan" (Dkt. No. 71-6, at PC 000428).   The third email of August 1, 2011, reviews the details of the loan agreement between Bank of the Ozarks and the Perrys before concluding that the loan met the requirements to waive the 30-day wait:

> Since the policy is lender required, it was issued without a 30-day waiting period with effective dates of 5/2/2011 -5/2/2012. . . .   While the insured was required to carry flood insurance since the loan was taken in 2008, we are not able to deny the insured a policy when the application is submitted and meets the requirements to waive the 30 day wait.

(Dkt. No. 71-7, at PC 000577).

Farmers argues that Mr. Henley's representations to the Perrys regarding the starting date of their policy cannot be imputed to Farmers.   Farmers correctly states as law that representations made by WYO's insurance agents regarding the extent and scope of coverage which are not consistent with NFIP regulations are void and that in such circumstances the insurance agent acts for the insured and not FEMA or the WYO.   44 C.F.R. § 61.5(e).   This, however, is not a case where the insurance agent acted alone in making representations to the insured.   In this case, Farmers adopted Mr. Henley's determination that coverage should apply to Perry's Motel immediately when Farmers sent the Perrys a revised Declaration Page on May 11, 2011, with a May 2, 2011, coverage start date.

The Court notes that Farmers sent the Perrys a second revised Declaration Page with a June 1, 2011, coverage start date over two months after Farmers sent the Perrys a Declination Letter.  However, Farmers quotes its SFIP contract with the Perrys, contending, "we have the right to review the information you give us at any time and to revise your policy based on our review."  44 C.F.R. Part 61, app. A(2), art. I.  Farmers argues that the original letter from the Bank of the Ozarks submitted with the Perrys' application implies that the Bank and the Perrys needed the flood insurance on the motel for the loan to close, but that, upon further review of the documentation, the loan closed almost three years before the Perrys sought flood insurance from Farmers, thus making the Perrys ineligible for the waiver of the 30-day wait provision.

Farmers claims the Perrys are ineligible for this waiver because, pursuant to federal regulation, the 30-day waiting period exception is applied only when application and payment of the premium are made prior to or contemporaneously with the loan closing and because, since the line of credit was issued in 2008, the exception does not apply to the Perrys.  *See* 44 C.F.R. § 61.11(b); *Dennis v. Fid. Nat. Prop. & Cas. Ins. Co.*, 2010 WL 3306879, *4 (W.D. La. Aug. 17, 2010).  Farmers further notes that it, as a WYO, does "not have the authority to vary, alter or waive the SFIP provisions."  *Mancini*, 248 F.3d at 731 n.1; *see also* 44 C.F.R. § 61.13(d).  The Perrys respond by saying that the loan at issue is a line of credit renewed on an ongoing basis, authorized through June 15, 2015.

Based upon this Court's review and the parties' briefing, whether a loan "closes" when the line of credit begins (in this case 2008), whether it closes through which time it is authorized (in this case 2015), or sometime in between, has not yet been decided by any court, and the Court can find no FEMA guidance on the matter.  However, because this Court identifies other

disputed issues of material fact not resolved by the record before it, this Court denies summary judgment for other reasons and need not resolve now this legal issue.

The disputed issues of material fact not resolved by this record relate to whether Farmers had all of the Perrys' loan documentation before it to review when it made various representations regarding the 30-day waiver and whether FEMA had all of the Perrys' loan documentation before it to review when FEMA made the determination that the Perrys were ineligible for the 30-day waiver.  The Court determines these issues are material because Farmers appears to believe that the fact that the loan was a line of credit could make a difference and that the loan documentation would need to be reviewed to make that determination (Dkt. No. 69-1, at 77:17–79:4); because Farmers several times after reviewing documentation made the determination that the 30-day waiver applied to the Perrys; and because FEMA was the entity that in the end denied the Perrys the 30-day waiver.  It is not clear from the record what loan documentation Farmers and FEMA had when they made these various determinations, including the final determination that the Perrys were ineligible for the 30-day waiver.

The Court determines that there are disputed issues of material fact regarding what loan documentation Farmers and FEMA had to review based on the record before the Court and the parties' arguments.  Specifically, in regard to the documents available to FEMA, the Court determines there are disputed issues of material fact based on the email exchange between NFS's Alana Jackson and FEMA's Sarah Bigelow excerpted in the Factual Background of this Opinion. In coming to this determination, the Court notes that the Perrys omitted from the record before the Court the relevant portion of Ms. Itschner's deposition concerning the contents of "Exhibit 24," which may or may not show that Ms. Jackson submitted some or all of these documents on or around December 12, 2011.  The Court does not find an "Exhibit 24" anywhere in the record.

Further, the Court recognizes that, in a January 9, 2012, letter to Senator Mark Pryor, Edward Connor, the Deputy Associate Administrator for Federal Insurance within FEMA, wrote that Farmers had reviewed the June 22, 2008, letter from Bank of the Ozarks confirming the "requirement to obtain and maintain flood insurance," but nevertheless found that a 30-day waiting period applied because the policy was not purchased until almost three years later and one day prior to the loss (Dkt. No. 18-2, PC 000045).   However, this letter does not state that FEMA had reviewed those documents.   The Court also recognizes that in a September 13, 2012, letter to Michael Perry, James Sadler, the Director of Claims for the NFIP, wrote that FEMA had reviewed the June 22, 2008, letter from Bank of the Ozarks confirming the "requirement to obtain and maintain flood insurance," but nevertheless found that a 30-day waiting period applied because the policy was not purchased until almost three years later and one day prior to the loss (Dkt. No. 47-10).   This letter indicates to the Court that sometime before September 13, 2012, FEMA had received at least the June 22, 2008, letter from Bank of the Ozarks, but the Court cannot determine on the record before it whether FEMA ever received all of the relevant loan documentation it requested from Farmers and NFS.   Thus, the Court finds the record before it is incomplete as to whether FEMA had the appropriate documentation to determine whether the 30-day waiting period applied at various points during its review.

Because the Court has determined that disputed issues of material fact exist sufficient to deny the Perrys' and Farmers' motions for summary judgment, this Court also determines that it need not resolve at this time several other legal issues presented by the case.   For example, based on the briefings before the Court, there is some indication on the record that FEMA may have based its determination regarding the 30-day waiting period on a then-unwritten guideline that the insured must respond to the lender's request for flood insurance within 60 days to trigger the

waiver of the 30-day waiting period (*Id.*, at 75:4–77:16).  It is not clear whether this requirement

applied to the Perrys, and the Perrys maintain that it did not.

Furthermore, it also is not clear that FEMA ever considered that the motel, although not

primary collateral for the Perrys' line of credit, might in effect be the "subject of the loan."

Based upon this Court's review and the parties' briefing, whether a property which is not the

primary collateral of a loan, but for which the loan is to be used and from which the loan is to be

paid, can be the "subject" of that loan has not yet been decided by any court, and the Court can

find no FEMA guidance on the matter.  However, for the reasons explained, the Court need not

decide this issue today.  Because there are genuine issues of material fact in dispute, the Court

denies both the Perrys' and Farmers' motions for summary judgment on the Perrys' breach of

contract claim.

### D.    Voidance For Intentional Misrepresentation Or Concealment

Farmers next makes the argument that the original letter from Bank of the Ozarks

attached to the Perrys' initial flood insurance application was not "accurate" as Bank of the

Ozarks did not make a loan to the Perrys as represented to Mr. Henley (Dkt. No. 18, at 14).

Farmers argues that because of the inaccuracy in their application, the Perrys' intentional

concealment or misrepresentation of the nature of the 2008 loan, a material fact relating to the

policy, voids the policy.  *See* 44 C.F.R. Part 61, app. A(2), art. VII(B) (holding as void any NFIP

policy if the insured or the insured's agent "[i]ntentionally concealed or misrepresented any

material fact or circumstance").

The Court has reviewed the relevant documents and finds that Farmers has failed to

allege specific facts showing the Perrys intentionally concealed or misrepresented any material

fact or circumstance.  Nothing in the Bank of the Ozarks letter concerning the loan is inaccurate,

and Farmers does not allege that the Perrys made any specific misrepresentations regarding the loan.  The letter from Bank of the Ozarks specifically states that Farmers should contact the bank if it has any questions or needs any additional information (Dkt. No. 12-1, PERRY 004).  To the extent that letter and the Perrys' application "concealed" the nature of the loan as a line of credit, Farmers has not alleged any specific facts stating that either the Bank of the Ozarks or the Perrys did so "intentionally."  Furthermore, when NFS carefully reviewed the relevant loan documents, memorialized in their May 31, 2011, and August 1, 2011, emails, NFS found the documents sufficient to support a waiver of the 30-day requirement before sending the Declination Letter on December 30, 2011.  Thus, the Court finds the Perrys' NFIP policy with Farmers is not void because of any intentional misrepresentation or concealment on the Perrys' part.

### E.      Denial Due to Flood in Progress

Pursuant to Article V(B) of the SFIP, the policy does not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date the policy term began or coverage is added at the insured's request.  Farmers, relying on Mr. Childers's July 8, 2011, final report on Perry's Motel, argues that the Perrys' policy does not cover the flood damage of May 3, 2011, because the flood that caused the loss was out of its banks and in flood on May 2, 2011, when the Perrys purchased their flood insurance (Dkt. No. 18-8).  However, as the Perrys note, Mr. Childers issued another final report a couple of months later on September 21, 2011, wherein he amends his prior final report to state that there was no flood in progress at the time the Perrys secured flood insurance (Dkt. No. 23-2, at PC 000191–93; Dkt. No. 72-5, at 46:8– 46:19; *see also* Dkt. No. 72-5, at 46, 53–61 (Mr. Childers's deposition explaining the research that led to his change of opinion regarding the flood-in-progress issue); Dkt. No. 23-5, PC 000417–18 (Mr. Childers's technical explanation as to why there was no flood in progress at

issue with regard to the Perrys' claim)).   Furthermore, in Farmers' December 30, 2011, Declination Letter, Farmers acknowledged "[t]he adjuster's final report indicates the general condition of flooding began in your area on 05/03/2011" (Dkt. No. 12-6).   The Court finds that Farmers' reliance on Mr. Childers's first report is misplaced.   Both Mr. Childers and Farmers later acknowledged that the flood did not begin in the Perrys' area until May 3, 2011.   Thus, based on the record evidence before it, the Court cannot find as an undisputed material fact that the flood began on May 2, 2011, and not on May 3, 2011.   Thus, the Court cannot on the record before it say as a matter of law that the Perrys' flood insurance claim would be properly denied due to a flood in progress.

### F.      Timeliness of the Proofs of Loss

Farmers' final argument is that, because the Perrys did not submit a timely proof of loss with any amount above zero dollars claimed, their claims should be denied.   Farmers notes that, in case of a loss, the insured have 60 days to submit a proof of loss, which is the insured's statement of the amount the insured is claiming under the policy, signed and sworn by the insured.   44 C.F.R. Part 61, app. A(2), art. VII(J)(4).   Farmers further notes that, under the same regulation, the insured must send the insurer a proof of loss within 60 days even if the adjuster does not furnish the form or help the insured to complete it.   *Id.* at art. VII(J)(7).   Farmers claims that the supplemental proofs of loss the Perrys submitted on September 12, 2011, are untimely under the 60-day rule of the policy and that their claim should be denied for this reason. Furthermore, Farmers argues that the Perrys' earlier-submitted timely proofs of loss on June 27, 2011, state a loss of zero dollars and, thus, allow for no recovery on the part of the Perrys.

The Perrys reply by stating that the adjuster acts as the agent of the insurer when adjusting claims under the NFIP.   *See Kerr v. Fed. Emergency Mgmt. Agency*, 113 F.3d 884, 887

(8th Cir. 1997) (holding that the NFIP adjuster's "principal" is the flood insurer).  The Perrys also cite the provision of the SFIP requiring the insured to cooperate with the adjuster in the investigation of the claim.  44 C.F.R. Part 61, app. A(2),  art. VII(J)(6).  The Perrys state that Mr. Childers told the Perrys that the amount stated in the proof of loss forms did not matter, that submitted with a zero loss initially would preserve their rights under the policy, and that the Perrys could submit supplemental proof of loss forms after Mr. Childers finished his estimate (Dkt. No. 23-1; Dkt. No. 72-5, at 35:20–42:4).  The Perrys state, and Mr. Childers and Mr. Henley corroborate, that Mr. Childers and his firm filled out proof of loss forms with "$0" as the amount claimed and sent the forms to the Perrys who cooperated by signing and submitting the proof of loss forms for "$0" on June 27, 2011 (Dkt. No. 23-1; Dkt. No. 72-5, at 36–38; Dkt. No. 72-1, at 53:23–54:2; *see also* Dkt. No. 12-3).  Mr. Childers in his deposition stated that he believes he filled out the proofs of loss with the zero dollar amount and believed that this would preserve the Perrys' rights under their policy (Dkt. No. 72-5, at 36–38).  Mr. Henley in his deposition also stated that either Mr. Childers or Farmers sent to him and the Perrys the proofs of loss with the zero dollar loss amount (Dkt. No. 72-1, at 53:23–54:2).  When Mr. Childers finished his estimate, his email correspondence told the Perrys that they would need to submit the attached supplemental proof of loss forms for $130,056.25 and $286,468.68 that he had completed (Dkt. No. 12-4).  In this email, Mr. Childers told the Perrys that these forms would "get over 400K in [their] hands" (*Id.*).

Farmers does not contest the Perrys' representation of these facts.  Farmers responds to the Perrys by arguing that Mr. Childers does not have the authority to represent to the Perrys how much or if Farmers would cover the Perrys' losses.  *See* 44 C.F.R. Part 61, app. A(2), art. VII(J)(8).  Farmers misstates the policy provision.  The policy states "[w]e have not authorized

the adjuster to approve or disapprove claims or to tell you whether we will approve your claim." *Id.*  While Mr. Childers may not have had the authority to approve or disapprove the Perrys' claim, neither may Farmers benefit from its adjuster's affirmative misrepresentations concerning the steps the Perrys had to take in order for Farmers to approve their claim.  Farmers states that any reliance the Perrys placed on Mr. Childers's representations was unreasonable as a matter of law (Dkt. No. 18, at 17).  However, the adjuster acts as the agent of the insurer when adjusting claims under the NFIP.  *See Kerr*, 113 F.3d at 887 (holding that the NFIP adjuster's "principal" is the flood insurer).  The Perrys were confronted with two policy provisions not facially inconsistent: timely submit a proof of loss and cooperate with the insurance adjuster in the investigation of the claim.  The Perrys thus timely submitted a proof of loss for zero dollars at the instruction of the adjuster, and, again at the instruction of the adjuster, the Perrys later filed a supplemental proof of loss as soon as the adjuster completed his report.

Because there is a presumption that federal funds are at stake, the proof of loss requirement of the SFIP must be strictly construed.  *Gunter*, 736 F.3d at 773; *Mancini*, 248 F.3d at 733.  "A strict construction of the SFIP is needed to protect sovereign immunity when federal funds are in question . . . ."  *Gunter*, 736 F.3d at 774 (citing *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013)).  This general rule requires that the insured timely file a proof of loss or supplemental proof of loss in order to recover.  The record before the Court reveals that the Perrys did not timely file a proof of loss or supplemental proof of loss for any amount over zero dollars.  While *Gunter* and *Mancini* make clear that the insured must timely submit any proofs of loss in order to recover under the SFIP, they also state that "affirmative misconduct might justify estoppel against the government in some circumstances."  *Gunter*, 736 F.3d at 774; *Mancini*, 248 F.3d at 735.  The Eighth Circuit in *Gunter* suggests that an example of such affirmative

misconduct might be when a WYO's adjuster's representations cause the insured to fail to file a timely proof of loss for the amount the insured wishes to claim. *Id.* ("The Gunters did not tell [the adjuster] that they disagreed with the February 2010 proof of loss until after the 60 days to file a proof of loss had passed. The Gunters' failure to file a timely proof of loss for the disputed amount thus cannot have been the result of [the adjuster's] representations, and the Gunters' estoppel argument fails."). With this suggestion, the Eighth Circuit in *Gunter* explicitly left open the possibility that affirmative misrepresentations by the adjuster which caused the insured to fail to file timely a supplemental proof of loss might justify estoppel against the government. Thus, although the Eighth Circuit has not found that estoppel applies under these facts, the Eighth Circuit has left open the limited possibility that estoppel might apply under facts like those presented here.

For this reason, the Court finds, based on the Eighth Circuit's ruling in *Gunter* and the specific facts of this case, that the Court cannot find as a matter of law that estoppel does not apply on the facts presented here. There are genuine issues of disputed material fact regarding what affirmative misrepresentations Mr. Childers as Farmers' adjustor made to the Perrys and whether the Perrys' reliance on the misrepresentations was reasonable under the circumstances. To the extent the facts proved at trial support it, Farmers may be estopped from asserting the proof of loss requirement as a bar to the Perrys' recovery.

### G. Remaining Arguments In Support of Summary Judgment

Satisfied that the foregoing analysis adequately addresses and appropriately disposes of the parties' requests for summary judgment, the Court declines to reach the additional claims made by the parties in their briefs.

## VI.      Motion to Dismiss Standard

Farmers also has pending a motion to dismiss (Dkt. No. 44) to which the Perrys have responded (Dkt. No. 66).  Farmers moves to dismiss all of the state-law based extra-contractual and tort claims in the Perrys' complaint, arguing that, if any claim is permitted to proceed, only the Perrys' contract claim should be permitted to proceed.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## VII.      Motion to Dismiss Discussion

Farmers moves to dismiss all of the Perrys' state-law based extra-contractual and tort claims arising out of flood insurance claims-handling matters, including but not limited to the Perrys' request for compensatory and punitive damages in tort (Dkt. No. 1, ¶ 10), request for liability outside the scope of the arrangement (*Id.*, ¶ 13), claim for promissory estoppel and unjust enrichment (*Id.*, Count II), claim for constructive fraud (*Id.*, Count III), claim for

violations of the Arkansas Deceptive Trade Practices Act (*Id.*, Count IV), and claim for negligence (*Id.*, Count V), along with requests for attorneys' fees and pre- and post-judgment interest.  Farmers argues that United States Supreme Court precedent, FEMA's regulatory bar to detrimental reliance claims, federal preemption, and the Commerce Clause and Appropriations Clause of the United States Constitution dictate that the Perrys' extra-contractual claims be dismissed.  The Perrys respond that, while extra-contractual claims based on claims handling are preempted by federal law, procurement-based claims—claims concerning actions by the insurer before the plaintiff is covered under the insurance policy—are not preempted.  *See, e.g., Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 400 (5th Cir. 2012) (citations omitted).

The preemption doctrine derives from the Constitution's supremacy clause which states that laws of the United States made pursuant to the Constitution are the "supreme Law of the Land."  U.S. Const. Art. VI, cl. 2.  While "[a]ny preemption analysis begins with the basic assumption that Congress did not intend to displace state law," *Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993), "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid," or preempted.  *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat. 1, 211 (1824)).  There are three types of federal preemption:  (1) express preemption, (2) field preemption, and (3) conflict preemption.  Courts discern congressional intent to preempt state law "when Congress expressly forbids state regulation (express preemption), when it creates a scheme of federal regulation so pervasive that the only reasonable inference is that it meant to displace the states (field preemption), and when a law enacted by it directly conflicts with state law (conflict preemption)."  *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005).  A federal

regulation has the same preemptive effect as a federal statute unless such regulation is one that Congress would not have sanctioned.  *Fid. Fed. Sav. And Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

### A.    Procurement-Based Claims And Claims-Handling Claims

The Eighth Circuit has made clear that state law tort claims arising from the handling of any claim under the SFIP are expressly preempted by federal regulation.  *See Gunter*, 736 F.3d at 772.  The SFIP, codified in the Code of Federal Regulations, contains a provision that reads: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law."  44 C.F.R. Pt. 61, App.A(1), Article IX.  Upon reviewing this language, the Eighth Circuit in *Gunter* concluded that "Article IX as amended demonstrates the clear intent to preempt state law claims that arise from the handling of a claim under the SFIP," decided that the Gunters' claims arose from the handling of their claim under the SFIP, and thus determined that the Gunters' claims were expressly preempted under Article IX.  *Gunter*, 736 F.3d at 772.

The Perrys argue that their state law claims against Farmers arise not from the handling of their claims, as encompassed by Article IX, but from the procurement of their policies. Neither the Eighth Circuit nor any court within the Eighth Circuit has ruled on this distinction. Judge Wilson of this Court, however, has recently noted the distinction.  *Stoner v. Southern Farm Bureau Cas. Ins. Co.*, 2013 WL 593459, *3 (E.D. Ark. Feb. 15, 2013), *McCarty v. Southern Farm Bureau Cas. Ins. Co.*, 2013 WL 593636, *3 (E.D. Ark. Feb. 15, 2013) (noting that there "may be some dispute" as to "whether federal law preempts state-law procurement

claims," but that "federal law expressly preempts state-law claims related to the handling of policy claims").

> The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption.

*Grissom*, 678 F.3d at 401.  The Perrys argue that their state law extra-contractual and tort claims are based on Mr. Henley's and Farmers' representations to them that coverage began on May 2, 2011, and Mr. Henley's representations to the Perrys in late May, allegedly obtained from Farmers, that the Perrys could begin demolition work on the motel.  As discussed above, the Perrys argue that these and other representations should mean the policy began on May 2, 2011, and it is possible that facts will come to light which will show the Perrys were in fact covered by flood insurance at the time of the flood and, therefore, that their legal claims are in fact claims-handling claims.  Since this Court has declined to decide summarily that the Perrys were either covered or not covered by flood insurance at the time of the flood, it cannot decide at this time that the Perrys' extra-contractual and tort state law claims based on representations made before June 1, 2011, which Farmers and FEMA assert to be the effective date of coverage, are claims-handling claims in order to dismiss them at this stage in the proceedings.

In *Simmons v. Mississippi Farm Bureau Casualty Insurance Co.*, the Court found that when the alleged misrepresentations concerning flood insurance coverage occurred when plaintiffs' only relationship with the WYO were that of potential future flood insurance policyholders and when the WYO's alleged misrepresentations were of a kind that could lull plaintiffs into believing that they would receive immediate coverage for the flood damage under the WYO's policy, plaintiffs' claims were procurement-based claims.  2013 WL 3895043, *4

(N.D. Miss. July 29, 2013).  The *Simmons* court determined that plaintiffs alleged that they relied on the WYO's misrepresentations throughout the initial application, delivery of premium payment, occurrence of flood damage, receipt of copy of policy, submission of claim pursuant to the policy, and denial of coverage under the policy.  *Id.*  While that court declared the case a close question of law, it nevertheless found that plaintiffs' claims were procurement-related, concluding that plaintiffs challenged alleged representations made by the WYO prior to the application of the policy and in the infancy of the procurement of flood damage protection.  *Id.* This Court finds *Simmons* instructive in the instant case.  If the Perrys' were not covered by flood insurance prior to June 1, 2011, then their claims based on Mr. Henley's and Farmers' alleged misrepresentations occurred when the Perrys' relationship with Farmers was that of potential future flood insurance policyholders and, therefore, likely are procurement-based claims.  *See also Campo v. Allstate Ins. Co.*, 562 F.3d 751, 756 (5th Cir. 2009); *cf. Grissom*, 678 F.3d at 401 (finding that plaintiff's claims challenging the lack of information he received while he was already insured concerning his eligibility for additional flood insurance coverage were not procurement-based).  Because this Court finds that the Perrys' claims may be procurement-based depending on the resolution of disputed facts, and because neither the Eighth Circuit nor any court within the Eighth Circuit has yet to address the issue, whether procurement-based claims are preempted by federal law is one of first impression for this Court.  This Court will examine each theory of preemption as it relates to the Perrys' potential procurement-based claims.

### B.      Express Preemption

This Court will begin the preemption analysis "with the basic assumption that Congress did not intend to displace state law."  *Bldg. & Constr. Trades Council of Metro. Dist.*, 507 U.S.

at 224.  Regarding express preemption, Article IX of 44 C.F.R. Pt. 61, App.A(1), quoted above, clearly states that "all disputes arising from the handling of any claim under the policy" are expressly preempted by federal law.  Thus, this language is explicit with regard to disputes involving the *handling* of claims under a flood insurance policy but, as many courts have noted, does not address procurement-based claims.  *See Campo*, 562 F.3d at 757; *Williams v. Standard Fire Ins. Co.*, 892 F. Supp. 2d 615, 620 (M.D. Pa. 2012), *reconsideration denied* (Sept. 24, 2012).  Therefore, Article IX does not expressly preempt the Perrys' extra-contractual and tort state law causes of action to the extent those causes of action are procurement-based claims.  The parties have pointed to no other federal statute or regulation which provides express preemption.

Farmers, however, does cite a July 16, 2009, memorandum from FEMA to WYO and related companies expressing disagreement with the Fifth Circuit's March 2009 *Campo* decision.  *See* Edward L. Connor, Acting Fed. Ins. Adm'r, Nat'l Flood Ins. Program, WYO Program Bull. No. W–09038, Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy (July 16, 2009), http://www.nfipiservice.com/pdf/bulletin/w-09038.pdf.  This memorandum states in relevant part

> In particular, *Campo* found that certain issues related to the renewal of a policy were questions of policy formation, not claims handling, and held that a claim based on a breach of a state-law duty governing policy formation is not preempted by the National Flood Insurance Act and its implementing regulations. . . .
>
> Rather than its application in *Campo*, federal preemption should apply not just to claims handling activities, but also to policy administration.  Specifically, preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and the administration of existing flood policies, including but not limited to rating, renewal, transfer, non-renewal, cancellation, or reformation.  Insurance agent procurement disputes or any allegation of negligence on the part of the insurance agent related to procurement are not subject to preemption.

*Id.*

Some courts have decided that this memorandum should be given deference as FEMA's interpretation of its own regulations. *Davis v. Nationwide Mut. Fire Ins. Co.*, 783 F. Supp. 2d 825, 833 (E.D. Va. 2011) (quoting *Stinson v. United States,* 508 U.S. 36, 45 (1993) ("Provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.")); *Geisler v. Don Hunt & Associates, Inc.*, 2012 WL 966119, *3 (D. Kan. Mar. 21, 2012); *Harbour Light Towers Ass'n, Inc. v. Ameriflood, LLC*, 2011 WL 2517222, *4 (M.D. Fla. June 23, 2011); *see also Remund v. State Farm Fire & Cas. Co.*, 2010 WL 2025591, *5 (D. Utah May 18, 2010) *aff'd*, 483 F. App'x 403 (10th Cir. 2012) (citing the FEMA memorandum as important to its decision).

For the reasons that follow, this Court accords this memorandum little deference in its decision. There is no consensus among courts in how to treat this memorandum. Only two circuit courts have addressed the FEMA memorandum, the Fifth and Tenth Circuits, and neither has given it significant deference. The Fifth Circuit and the courts within it, due to location, historically have handled the most flood insurance cases of courts in any circuit. The Fifth Circuit in *Grissom* upheld the claims-handling, procurement-based distinction, citing the FEMA memorandum without acknowledging its negative view of *Campo*. *Grissom*, 678 F.3d at 400, 401 n.2. The Tenth Circuit in *Remund* held that procurement-based claims are federally preempted based on its "*independent* assessment," and specifically declined to "decide whether such an interpretative pronouncement of FEMA, as found in the bulletin, is entitled to any deference—an issue that is complicated by the fact that the pronouncement at issue directly pertains to the subject of preemption." *Remund*, 483 F. App'x at 408 n.3 (citing *Colo. Pub. Util. Comm'n v. Harmon*, 951 F.2d 1571, 1579 (10th Cir. 1991) ("We defer to an administrator's

construction of his own regulations unless it is plainly erroneous or inconsistent with the regulation. . . .  However, a preemption determination involves matters of law—an area more within the expertise of the courts than within the expertise of the [administrator]." (citations omitted)); Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8353, at 233, 243 (2006) (collecting cases offering different perspectives on deference to an administrative agency's interpretation of its own regulations and noting that "[b]ecause of the federalism concerns, a court might give less deference to an interpretation that results in preemption of state law")).  Furthermore, the Tenth Circuit based its decision that procurement-based claims were preempted on Utah law.  *Remund*, 483 F. App'x at 406.

Although some courts have decided this memorandum should be given deference such that procurement-based claims are preempted, other courts have addressed the memorandum and nevertheless concluded that procurement-based claims are not preempted.  *See, e.g.*, *Grissom*, 678 F.3d at 400, 401 n.2; *Williams*, 892 F. Supp. 2d at 621 n.2.  Other courts have cited precedent and simply not addressed the FEMA memorandum at all when finding that procurement-based claims are not preempted.  *See, e.g.*, *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732 (W.D. Pa. Nov. 6, 2013); *Danho v. Fid. Nat. Indem. Ins. Co.*, 2013 WL 5411195 (D.N.J. Sept. 26, 2013); *Simmons*, 2013 WL 3895043.  At least one district court in the Fifth Circuit was persuaded by the FEMA memorandum but felt bound by the Fifth Circuit's *Campo* decision to uphold the procurement-based and claims-handling distinction.  *Grigsby v. Fid. Nat. Prop. & Cas. Ins. Co.*, 2011 WL 4591930, *2 (E.D. Tex. Aug. 31, 2011) *report and recommendation adopted*, 2011 WL 4591925 (E.D. Tex. Sept. 30, 2011).  Thus, although some courts have decided the FEMA memorandum should mean that procurement-based claims are preempted, there is no consensus; courts remain divided on the matter.

Concluding that no consensus exists in the courts as to whether the FEMA memorandum should be entitled significant deference in determining whether procurement-based claims are preempted, the Court turns to the merits of the question.  This Court finds the *Williams* court's analysis persuasive.  892 F. Supp. 2d at 621 n.2.  That court found the FEMA memorandum was "not persuasive as to precluding plaintiff's state law causes of action."  *Id.*  In analyzing that memorandum, the *Williams* court stated:

> It is merely a memorandum which indicates FEMA's position to insurance companies, the NFIP plan servicing agent and adjusting firms.  It concludes that "FEMA will review its regulations to determine whether clarification is required to fully implement its intended scope of preemption."  Although this memorandum was issued over three years ago, the parties have not cited to any actual change in the regulations.  We give little weight to this memorandum in making our decision.

*Id.*  The *Williams* court made this determination on August 30, 2012.  There has been no change in the regulations since.  This Court finds this particularly notable in light of the fact that the memorandum is entitled "Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy."  Almost five years after FEMA stated it would review its regulations while courts have continued to hold that procurement-based claims are not preempted, no relevant regulation has been adopted by FEMA clarifying the issue, and no additional memorandum has been issued.  Given the title of the memorandum, the language expressing an intent to review, the fact that the memorandum was sent only to WYO insurance and similar companies, the fact that it is an informal agency opinion, and the fact that it addresses preemption, the Court finds the 2009 FEMA memorandum carries little weight in determining whether procurement-based claims should be preempted by federal law.  The parties cite to no additional law which might imply express preemption in this

case. Thus, the Court determines the Perrys' procurement-based extra-contractual and tort claims are not expressly preempted.

### C.     Field Preemption

Turning to the second type of preemption, field preemption applies where "[f]ederal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 516 (1992). "As insurance law is an area traditionally regulated by the states, the defendant bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 734 (E.D.N.C. 2000); *see also Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F. Supp. 2d 750, 761 (D. Md. 2006).

This Court agrees that "the better view is that NFIA does not preempt procurement fraud claims" and that "the NFIA only indemnifies insurance brokers sued for issues arising from FEMA's actions, not for the negligence or intentional acts of brokers concerning the procurement of the insurance contract itself, a situation over which FEMA has little control." *Fadel v. Nationwide Mutual Fire Ins. Co.,* 2012 WL 5878728, *5–6 (W.D. Ky. Nov.21, 2012), *on reconsideration in part*, 2013 WL 1337390 (W.D. Ky. Mar. 29, 2013). In making this determination, this Court finds instructive the analysis of the court in *Padalino v. Standard Fire Ins. Co.*:

> Preemption of state law by the NFIA "would leave an entire area of the insurance field unregulated and immunize private insurers no matter how egregious their conduct." Without judicial oversight, WYO companies are effectively permitted to make misrepresentations about the SFIPs they are selling or promises they do not intend to keep, thereby harming the very people that Congress was trying to protect. . . .   In the absence of state law to regulate the conduct of WYO companies during SFIP procurement, an entire area of the NFIP would essentially go unchecked.  Thus, it cannot be said that Congress has thoroughly occupied this

field of SFIP procurement when indeed the NFIA hardly occupies this field at all.
Therefore, Plaintiffs' claims are not preempted by field preemption.

616 F. Supp. 2d 538, 545–46 (E.D. Pa. 2008) (quoting *Bleecker v. Standard Fire Ins. Co.*, 130

F.Supp.2d 726, 736–37 (E.D.N.C. 2000)).

In reaching the conclusion that Congress did not intend to supplant state law regarding

procurement-based claims, this Court notes that federal regulations specifically state that if

"litigation is grounded in actions by the [WYO] Company that are significantly outside the scope

of this Arrangement, and/or involves issues of agent negligence," then litigation costs will not be

reimbursable to the WYO carrier.  44 C.F.R. Part 62, app. A, art. III(D)(3); *see also Grissom*,

678 F.3d at 399; *Campo*, 562 F.3d at 754.  Further, the Court finds persuasive that the SFIP

specifically states that claims-handling claims are preempted and has not issued any regulation

regarding procurement-based claims.  *See Campo*, 562 F.3d at 757 (finding that "two factors

convincingly demonstrate that federal law does not preempt state-law procurement-based claims.

First, Congress, via its delegation of regulatory power to FEMA, has expressly preempted state

law only as to handling-related claims.  And, 'Congress' enactment of a provision defining the

pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.'"

(quoting *Cipollone*, 505 U.S. at 517; citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 289

(1995) for the proposition that "at best" *Cipollone* supports only an *inference*, not a *rule*, "that an

express pre-emption clause forecloses implied pre-emption")).  Thus, the Court determines the

Perrys' procurement-based extra-contractual and tort claims are not barred by field preemption.

### D.    Conflict Preemption

Finally, turning to conflict preemption, conflict preemption exists where either:  (1) the

state law "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress," or (2) it is "impossible for a . . . party to comply with both state and

federal law." *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 899 (2000). "Here, it is possible for a party to comply with both state and federal law. Nothing in the Act allows for an insurer to make misrepresentations or act negligently in the procurement of insurance, and they can provide insurance under the Act without making misrepresentations or acting negligently." *Williams*, 892 F. Supp. 2d at 622 (citing *Padalino*, 616 F.Supp.2d at 544 ("It is certainly possible to comply with both state and federal law in this case: A WYO insurer can market SFIP insurance policies that comply with federal law without making negligent or fraudulent misrepresentations.")). "Additionally, state law tort claims do not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . [T]he purpose of the law is to reduce losses caused by flood damage and spread the risk of flood losses. To allow state law claims against an insurer for negligence or misrepresentations in the procurement process does not thwart or obstruct these objectives." *Williams*, 892 F. Supp. 2d at 622 (citations omitted).

Thus, this Court finds that the Perrys' procurement-based state law claims are not preempted under federal law, and Farmers' motion to dismiss is denied (Dkt. No. 44). However, as noted above, facts may come to light which may reveal that the Perrys were in fact covered by the SFIP starting May 2, 2011. If so, some of the Perrys' state law-based claims against Farmers may in fact be claims-handling claims and, thus, expressly preempted by federal law. *Gunter*, 736 F.3d at 772.

**E.      Remaining Arguments In Support Of Dismissal**

Satisfied that the foregoing analysis adequately addresses and appropriately disposes of Farmers' motion to dismiss, the Court declines to reach the additional claims made by Farmers in its brief.

## VIII.   Motion to Quash the Jury Demand

Finally, the Court turns to Farmers' motion to quash the jury demand (Dkt. No. 39).   In an action where federal funds are at stake, a plaintiff is only entitled to a jury trial if Congress has granted that right by statute.  *Gunter*, 736 F.3d at 773.   "It is well-established that Congress has not provided for the right to a jury trial in actions against FEMA or a WYO Company with respect to claims for coverage under a SFIP or disputes regarding terms of the SFIP."  *Reeder*, 419 F. Supp. 2d at 766 (citing *Bleecker*, 130 F.Supp.2d at 737; *Kolner v. Director, FEMA*, 547 F.Supp. 828, 830 (N.D. Ill. 1982); *Latz v. Gallagher*, 550 F.Supp. 257 (D.C. Mich. 1982)).  The Perrys have provided no evidence that FEMA will not be reimbursing Farmers for the cost of this litigation with respect to their contractual claims, and it is presumed that FEMA pays the litigation expenses and any resulting damages awards on those claims.  *See Grissom*, 678 F.3d at 402.   Accordingly, Farmers' motion to quash the jury demand is granted with respect to the Perrys' breach of contract claims.

The analysis differs with respect to the Perrys' extra-contractual and tort state law procurement-based claims against defendants for promissory estoppel and unjust enrichment, constructive fraud, violations of the Arkansas Deceptive Trade Practices Act, and negligence. "Where federal funds are not at stake in connection with such claims, courts have found that plaintiffs are entitled to a jury trial."  *Reeder*, 419 F. Supp. 2d at 766 (citing *Bleecker*, 130 F.Supp.2d at 737; *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 2004 WL 2435002, *3–4 (E.D. La. 2004); *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 794 (5th Cir. 1993) ("[T]he case was submitted to the jury on both fraud and contract theories of liability.")).  Because it is not clear from the record whether the Perrys' procurement-based extra-contractual and tort state law claims will result in charges against the United States Treasury, Farmers' motion to quash the

jury demand is denied with respect to the Perrys' procurement-based state law claims at this time.

## IX.     Conclusion

For the foregoing reasons, plaintiffs' motion to strike is granted in part and denied in part (Dkt. No 67); plaintiffs' motion for partial summary judgment against Farmers on breach of contract and Farmers' motion for summary judgment are denied (Dkt. Nos. 12, 46); Farmers' motion to dismiss is denied (Dkt. No. 44); and Farmers' motion to quash the jury demand is granted in part and denied in part (Dkt No. 39).

SO ORDERED this 8th day of July, 2014.

Kristine G. Baker
United States District Judge